## Reading Trust Co. v. Eveler

*Lewis P. Sterling*, for plaintiff.

*Laucks & Monroe*, for defendants.

SHADLE, J., October 25, 1965. — Defendants and Fyre-Safety, Inc., entered into a written contract, whereby the latter agreed to sell to and install for the former in their home "1 complete Model #55 Fire Detective System . . . & Prowler alarm". The price was stated to be "$595.00 installed, plus finance charges", payable in 36 equal monthly installments of $22.56 each (which totals $812.16). At the same time, defendants signed a blank promissory judgment note, which they understood would be used for financing purposes, as the contract provided. Also, at the same time the parties signed a document called "Subscribers' Advertising Plan", which provided that for the name of each prospective purchaser of the product which the buyers submitted to the seller, the former would be paid from $5 to $35 for either sales demonstrations or actual sales accomplished to such prospects.

The device was installed in defendants' home the day after the sale. It consisted of a switch box attached to the cellar wall, from which wires were run inside the

partition walls to thermal detection devices installed in holes in the ceilings of various rooms, a burglar alarm detection wire plugged into a receptacle in the kitchen, an alarm buzzer located within the house and an alarm bell outside the house.

Thereafter, defendants submitted to the seller the names of some 50 prospective purchasers, and were paid therefor undisclosed amounts. The seller assigned the judgment note to plaintiff, the note having been filled in for the full installment price and the installments contemplated by the contract. When defendants were advised by plaintiff that the indebtedness was $812.16, defendants notified the seller that they intended to rescind the contract, that it should remove the system and they refused to pay any installments. Plaintiff confessed judgment on the note, defendants have petitioned to open the judgment, and argument on petition, answer and depositions was had before the court.

Defendants claim the obligation is invalid because they were induced to sign the documents by fraud and duress, and because the contract does not comply with the Home Improvement Finance Act of August 14, 1963, P. L. 1082, 75 PS §500-101, et seq. Plaintiff denies any fraud or duress existed, and asserts that the transaction is not within the terms of the act in question.

Section 102 (10) of the act, 75 PS §500-102, provides that " 'Home improvement installment contract' . . . means an agreement covering a home improvement installment sale, whether contained in one or more documents, together with any accompanying promissory note . . . pursuant to which the buyer promises to pay in installments . . . prices of goods and services . . . The meaning of the term does not include such an agreement if . . . (iii) it covers only an appliance designed to be free standing and not built into and per-

manently affixed as an integral part of the structure such as a stove, freezer, refrigerator, air conditioner, other than one connected with a central heating system, hot water heater and the like . . ."

The same section, in subsection (7), defines "goods" as "all chattels personal which are furnished or used in the modernization, rehabilitation, repair, alteration or improvement of real property . . .", and, in subsection (16), defines "services" as "work, labor and services furnished in connection with the installation or application of goods . . ."

There have not as yet been any judicial interpretations of this recent act. However, from the description of the device purchased by defendants and the manner in which it was installed, it seems to us beyond question that the transaction was one for a home improvement within the meaning of the act. Certainly, the equipment resulted in the "modernization . . . alteration or improvement" of defendants' property, because, at least according to the seller's claim, the home thereupon became safer from the hazards of fire and burglary.

Plaintiff argues that the device is within the exception of section 102 (10), supra, because it was "designed to be free-standing and not built into and permanently affixed as an integral part of the structure". This clearly was not the case, since wires were installed inside partitions and detection units were placed in ceiling holes. In no sense was the equipment similar to a stove, freezer, refrigerator, air conditioner or hot water heater. Most of such units become operative merely upon being plugged into an electrical receptacle, and once removed give no evidence of their having been there. Instead, this device was comparable to a plumbing or electrical system, built into the partition walls and running to certain operating units throughout the house. It thereby became an integral part of the structure. While it was not "permanently affixed"

in the sense that it never could be removed, it certainly was not portable or removable in the sense of the devices mentioned in the exception clause.

We conclude, therefore, that the transaction between the parties involved a home improvement installment contract within the meaning of the act. This being so, the documents and the actions of the parties admittedly failed to comply with numerous requirements of the act. The contract did not bear the title prescribed by section 202(b), nor the proper notice to the buyer under section 202(c), it did not state the amount of the finance charge, time balance or time sale price as required by section 203, and it contained no notice of the right of rescission as set forth in section 203. The note was transferred from the seller to plaintiff without simultaneous delivery of the contract, contrary to section 207. Perhaps most significantly, in connection with the inducement to enter into the contract, the seller made promises of the payment to the buyers of compensation for the procurement of contracts with others, a device prohibited by section 404 of the act. Since plaintiff gave no notice to defendants of the assignment of the note, all of these defenses remain available to defendants against plaintiff as assignee, under section 208 of the act.

Having concluded that the contract and note are defective for failure to comply with the Home Improvement Finance Act, it is unnecessary for us to pass upon the issue of possible fraud or duress in the execution of the documents.

### ORDER

And now, to wit, October 25, 1965, the prayer of defendants' petition is granted, the rule issued thereon is made absolute, and said judgment is opened to permit defendants to assert their defense thereto. An exception is noted for plaintiff.